1              **UNITED STATES DISTRICT COURT**
               **MIDDLE DISTRICT OF FLORIDA**
2                    **ORLANDO DIVISION**

3                                          :
                                           :
4    **UNITED STATES OF AMERICA,**         :
                                           :    Case No.:
5         Plaintiff,                       :    6:22-cr-00201-WWB-LHP-1
                                           :
6    v.                                    :    Orlando, Florida
                                           :    January 26, 2023
7                                          :    2:01 P.M. - 2:33 P.M.
                                           :
8    **EVAN EDWARDS,**                      :
     **also known as Ian Heringa,**        :
9                                          :
          Defendant.                       :
10                                         :

11

12             **TRANSCRIPT OF STATUS CONFERENCE**
        **BEFORE THE HONORABLE LESLIE HOFFMAN PRICE**
13            **UNITED STATES MAGISTRATE JUDGE**

14   APPEARANCES:

15   For the Plaintiff:          Kara Wick
                                 U.S. Attorney's Office
16                               400 West Washington Street
                                 Suite 3100
17                               Orlando, Florida 32801

18   For the Defendant:          A. Brian Phillips
                                 A. Brian Phillips, P.A.
19                               912 Highland Avenue
                                 Orlando, Florida 32803

20

21   Proceedings recorded by real-time mechanical stenography.
     Transcript produced by computer-aided transcription.
22
                         Stenographically reported before:
23                    Heather Suarez, RPR, CRR, FCRR, FPR
                          U.S. Official Court Reporter
24             (407) 801-8921 | heathersuarez.usocr@gmail.com
        401 West Central Boulevard, Suite 4600, Orlando, Florida 32801
25

1                    **P R O C E E D I N G S**

2          (Call to order of the court at 2:01 P.M.)

3              **THE COURTROOM DEPUTY:**  Case No. 6:22-cr-201, United

4      States of America v. Evan Edwards.

5              Counsel, please state your appearances for the record.

6              **MS. WICK:**  Good afternoon, Your Honor.  Kara Wick on

7      behalf of the United States.

8              **THE COURT:**  Good afternoon.

9              **MR. PHILLIPS:**  Good afternoon, Your Honor.

10     Brian Phillips on behalf of Mr. Edwards, who is not with us

11     today.

12             **THE COURT:**  Good afternoon.

13             **MR. PHILLIPS:**  I'm sorry.  Not present in the

14     courtroom today.  He's with us as far as I know.  Sorry.

15             **THE COURT:**  Thank you for clarifying.

16             And as you-all can see, we do have a court reporter

17     here today.  There's apparently media interest in this matter,

18     so we keep getting requests for transcripts.  So I figured I'd

19     short-circuit everything.

20             So thank you very much, Madam Court Reporter, for

21     being here.  Appreciate it.

22             So, Counsel, I wanted to have this status conference

23     to address a couple of issues.  But also, as you know,

24     Magistrate Judges Baker and Kidd have been expertly handling

25     this case to date, and now you either have -- I'll leave it up

1    to you -- the benefit or the displeasure of dealing with me

2    because the case has now been officially assigned to me.  So

3    I'll be handling it from this point forward, and I wanted to

4    just kind of wrap my head around everything.

5           I have reviewed the entire docket, the expert report

6    from Dr. Hall, and all the parties' filings.  And I know this

7    has been going on now for about six weeks; and for better or

8    for worse, I'm also aware, as what is stated in the pretrial

9    bail report, of what happened about a little over a year ago

10   when Mr. Edwards -- both of the Edwards were arrested and then

11   the complaint was dismissed.  So I'm a little bit familiar with

12   the case from that point.

13          And I want to just kind of briefly go over the

14   procedural history to make sure I have it correct in my head

15   and give you-all an opportunity to correct anything, and then

16   what I think we're going to address today are the issues of

17   detention and getting a competency hearing set because I see

18   from both sides' papers, both sides are in agreement that we

19   should have a competency hearing.

20          I'm going to do my best not to disclose anything that

21   is still sealed.  Feel free, if I start to get too close to

22   that line, to kind of waive at me and shut me down, and I will

23   try to avoid unintentionally lifting the seal.  But, of course,

24   when we get to a competency hearing, all seals will wind up

25   having to be lifted, and we'll have to talk about everything in

1    detail at that point.

2         So, with that, my understanding is there was a

3    six-count indictment that the grand jury issued on

4    December 7th: Counts 1 through 5 against Evan Edwards, Counts 1

5    through 4 and 6 against Joshua Edwards.

6         And we're not going to address Joshua Edwards at all

7    today.  I know he's being represented by other counsel, and the

8    deadline for his competency evaluation is not until next week

9    anyway.

10        On December 14th Evan Edwards was arrested.  It's my

11   understanding from talking to Judge Baker, from reading the

12   minutes and everything, that there were some medical issues at

13   that time; so the initial appearance was unable to go forward.

14   Judge Baker temporarily -- did a temporary order of detention

15   that was entered on December 16th due solely to Mr. Edwards'

16   medical conditions.

17        I didn't see anything in the docket where the

18   United States requested detention under 3142.  We'll address

19   that in a minute.

20        Let me ask you that, Ms. Wick.  Is that correct?  I'm

21   assuming it didn't even get to that point.

22        **MS. WICK:**  I don't remember -- I'm sorry.  I don't

23   recall that I did.  I don't think that it got to that point.

24        **THE COURT:**  That's my understanding as well.

25        I know, Mr. Phillips -- I'm not even going to ask you

1    because you weren't on the case at that point.

2            So Judge Baker detained -- temporarily detained

3    Mr. Edwards based on medical condition and sent him to ORMC,

4    where he is still at ORMC; is that correct, Mr. Phillips?

5            **MR. PHILLIPS:**  As far as I know.  I checked on this

6    subject, I want to say, Thursday or Friday of last week.  He

7    was still at ORMC.

8            **THE COURT:**  Okay.  What about you, Ms. Wick?  Is

9    Mr. Edwards still at ORMC?

10           **MS. WICK:**  According to my understanding.  I've been

11   in contact with the marshals pretty consistently.  I think if

12   he were to be moved anywhere, that I would have known that.

13           **THE COURT:**  And I probably would have known too

14   because there probably would have been some request.

15           Okay.  So he's been -- Mr. Edwards -- and when I say

16   "Mr. Edwards," I'm obviously talking about Evan -- has been at

17   ORMC since December 14th.

18           At that point also, Judge Baker had provisionally

19   appointed the Federal Public Defender's Office.  And then on

20   December 20th the Federal Public Defender's Office notified the

21   court that there was a conflict, and Judge Baker provisionally

22   appointed you, Mr. Phillips, under the Criminal Justice Act.

23   So you've been handling Mr. Edwards' case since December 20th;

24   correct, sir?

25           **MR. PHILLIPS:**  I have, Your Honor, although I would

1    note that my appointment is provisional --

2              **THE COURT:**  Yes.

3         **MR. PHILLIPS:**  -- because we haven't gotten to the

4    stage where we can assess that issue, I think.

5              **THE COURT:**  I think you're exactly right.

6         So then there was a status conference on December 21st

7    that really was regarding access to Mr. Edwards at ORMC, and I

8    think at that point, Mr. Phillips, you were having some

9    difficulties getting to see him.  So Judge Baker continued the

10   hearing to December 27th.

11        At that point Magistrate Judge Kidd was now the duty

12   magistrate judge.  So he held the hearing on December 27th,

13   attempted to do an initial appearance and arraignment via Zoom

14   from the hospital.  From the minutes it looks like Judge Kidd

15   was able to get through some of it.  He was able to advise

16   Mr. Edwards of his rights and of the charge and the penalties.

17        Mr. Phillips, let me ask you, was that about as far as

18   Judge Kidd got?

19        **MR. PHILLIPS:**  It is, Your Honor.  So that the Court

20   is informed of the logistics, Judge Kidd's instructions were

21   for me to travel to ORMC, set up a communications piece of

22   equipment, my laptop, so that Mr. Edwards and I could both be

23   on screen, and the matter was done remotely.

24        Judge Kidd made inquiry of Mr. Edwards of certain

25   areas, but we got through a few questions before Mr. Edwards'

1     responses became either nonresponses or ambiguous to the point

2     where even Judge Kidd could not interpret the response he was

3     being given.

4            **THE COURT:**  Understood.  And at that time was

5     Mr. Edwards already using a feeding tube?

6            **MR. PHILLIPS:**  Mr. Edwards -- Evan Edwards?

7            **THE COURT:**  Uh-huh.

8            **MR. PHILLIPS:**  Your Honor, I had been appointed, so I

9     attended that hearing as his counsel.

10           **THE COURT:**  Right.  I just asked, did he have a

11    feeding tube at that time?

12          **MR. PHILLIPS:**  Oh, I'm sorry, Your Honor.

13          **THE COURT:**  That's okay.

14          **MR. PHILLIPS:**  I thought you were saying did he have a

15    PD.

16          **THE COURT:**  No, no, no, no.

17          **MR. PHILLIPS:**  Did he have a feeding tube?

18          **THE COURT:**  I know I talk fast.

19          **MR. PHILLIPS:**  No, no.  Your Honor, in the first one,

20    no, I don't believe he had a feeding tube inserted for the

21    first hearing.

22          **THE COURT:**  Okay.  It was, the January hearing?

23          **MR. PHILLIPS:**  The second live-by-Zoom hearing -- that

24    was the one he had the feeding tube inserted, and then I think

25    Judge Kidd noted on the record he saw the feeding tube.

1        **THE COURT:**  Yes.  And I -- I have -- there's some

2   transcripts that I was able to look at and some I was not.

3        So, Ms. Wick, is that your recollection as well, that

4   on December 27th Judge Kidd at least got through advising

5   Mr. -- and, again, when I'm speaking about Edwards in this

6   hearing, it's only about Evan -- advised Mr. Edwards of his

7   rights, the penalties, and the charges, and that's about as far

8   as we got?

9        **MS. WICK:**  Yes, Your Honor.

10        **THE COURT:**  Okay.  Thank you.

11        And just to put a finer point on it, we never got to

12   any request by the United States to detain under any provision

13   of 3142?

14        **MS. WICK:**  No, I don't believe so.

15        **THE COURT:**  Okay.  Thank you.

16        So then at that point Judge Kidd continued the hearing

17   to December 28th.  At that point it seems like it was more of a

18   status hearing.  You may or may not have been at the hospital,

19   Mr. Phillips, but it was discussing how to get the medical

20   records because nobody at that point had been able to get

21   access to them.

22        **MR. PHILLIPS:**  That's correct, Your Honor, but I was

23   at the hospital for that.

24        **THE COURT:**  Okay.

25        **MR. PHILLIPS:**  So Mr. Edwards attended that hearing as

1    well.

2              **THE COURT:**  Okay.  Very good.

3         And then I think later that same day, Judge Kidd again

4    continued the hearing after discussion of the medical records

5    and Mr. Edwards' medical condition, and I believe he also

6    entered an order at that date directing ORMC to release the

7    medical records, which they were.

8         And then there was a sealed joint report regarding

9    both sides' cursory review of the medical records -- that was

10   filed on January 3rd -- and suggestions by both sides of what

11   to do next.  And I think at that point both sides agreed there

12   should be some sort of a competency hearing.  I think there was

13   a discussion the United States wanted to just go ahead and send

14   Mr. Edwards to Butner.  Mr. Phillips, you said, "Let's do a

15   hearing" -- excuse me -- "an evaluation here with a private

16   psychiatrist."

17        Is that your recollection as well, Ms. Wick?

18             **MS. WICK:**  Yes, Your Honor.

19             **THE COURT:**  And, Mr. Phillips, what about you?

20             **MR. PHILLIPS:**  Precisely, Your Honor.

21             **THE COURT:**  Okay.  So then at the status hearing

22   before Judge Kidd on January 4th, he ordered a psychiatric

23   evaluation under 18 United States Code 4241, gave the parties

24   two days to give a joint notice as to names; and on January 6th

25   Judge Kidd ordered the evaluation to be conducted by Dr. Hall,

1   who is a licensed psychiatrist, with a deadline of January 17th

2   for the report and January 19th for both sides to file their

3   responses.

4            Up to that point, is there anything procedurally,

5   Ms. Wick, that I've either missed or that you want to add to

6   kind of help me get a full flavor of the case?

7            **MS. WICK:**  I think you've covered everything,

8   Your Honor.

9            **THE COURT:**  Thank you, Ms. Wick.

10            What about you, Mr. Phillips?

11            **MR. PHILLIPS:**  No.  I think so as well, Your Honor.  I

12   think you have a demonstrably unambiguous understanding of

13   exactly what occurred.

14            **THE COURT:**  Well, thank you for the compliment.

15            Then we get to Dr. Hall's evaluation.  I have read

16   that.  I know it's under seal.  And it's lengthy, about -- I

17   would say two thirds of it is a recitation of medical records.

18   And then we get into, it looked like -- again, without -- I

19   don't want to go into details.  I'm talking generalities --

20   that on two occasions Dr. Hall attempted to evaluate

21   Mr. Edwards, and he was unable or unwilling, because I know

22   there's a suggestion of potential malingering on some aspects,

23   but there's medical issues that are completely verifiable; that

24   he was unable to answer the questions.  And so Dr. Hall has

25   rendered an opinion that at present, under the *Dusky* standard,

1   Mr. Edwards is not competent to proceed but -- and I understand

2   his position on this -- is unable to determine if it's a

3   medical issue or if it's a mental issue or some combination of

4   the same.

5           Ms. Wick, what do you say to that and my

6   interpretation of what Dr. Hall said?  Again, I'm speaking in

7   generalities.

8           **MS. WICK:**  I think that's correct, Your Honor.  What I

9   took away from it was, as the Court mentioned, he found him to

10  be incompetent under the standard and that his recommendation

11  was to send him to a BOP facility for potential restoration.

12          **THE COURT:**  Thank you, Ms. Wick.

13          And, Mr. Phillips, does that -- anything you want to

14  add with respect to Mr. Edwards?  And I've seen your report,

15  and I know your position is that it's not a great evaluation or

16  not thorough enough for your purposes, but other than that,

17  what would you like to add, sir?

18          **MR. PHILLIPS:**  Only, Your Honor, that there were two

19  times when Dr. Hall met with Mr. Edwards.

20          **THE COURT:**  Uh-huh.

21          **MR. PHILLIPS:**  The first time was more problematic

22  than the second, and the sum total of the time was about

23  15 minutes.  And I -- the comment I made in our not joint

24  report, after Dr. Hall's report, addresses, I think, as best I

25  could, my concerns without revealing matters otherwise under

1    seal.

2              THE COURT:  And I think that's a very fair point.

3              So then I do have both sides' responses.  And to

4    summarize, again, the United States' position is you agree with

5    Dr. Hall's findings that Mr. Edwards is not competent and his

6    recommendation that Mr. Edwards be remanded to the custody of

7    the Attorney General and sent off to a BOP facility for

8    restoration?

9              MS. WICK:  Correct, Your Honor.

10             THE COURT:  And then, Mr. Phillips, your position is

11   you would like to have a competency hearing because -- and I

12   don't want to put words in your mouth, but it almost seems like

13   you can't even tell what Dr. Hall was really saying.  So you

14   don't want to say you agree or disagree because we're not sure

15   what we're agreeing or disagreeing with.

16             MR. PHILLIPS:  Your Honor, I think that's fair.

17   Dr. Hall's findings were, in my limited experience in

18   competency matters, aberrant in the sense they were

19   inconsistent; and, as a consequence, I can't take Dr. Hall's

20   report at face value.  And, to my mind, the client's rights are

21   better protected by a true, I guess, adversarial competency

22   hearing.

23             THE COURT:  Yes.  I don't --

24             MR. PHILLIPS:  And that's our view of the universe.

25             THE COURT:  And I don't see the United States

1    objecting to having a competency hearing.  I think they

2    agree --

3          Or, Ms. Wick, I don't want to put words in your mouth,

4    but I think you agree in your report that the next step would

5    be a competency hearing.

6          **MS. WICK:**  That's correct, Your Honor.  In the event

7    that it was not contested, then our position would be,

8    ultimately, he would be sent to BOP.  But under 4241 -- excuse

9    me -- I think it's appropriate to have a hearing.

10          **THE COURT:**  And I agree with that.  And so I agree

11    that the next step would be to set up a competency hearing, and

12    we can talk about the logistics of that in a minute because I

13    think there's a precursor or a prefatory issue to address, and

14    that is, Mr. Phillips, your request for a detention hearing

15    because I think I'd like to address that first, and then we can

16    talk about what to do with the competency hearing.  And I also

17    understand you're going to want to move in a separate motion --

18    I'm not going to ask you to do it right now -- for additional

19    examinations and whatnot, and the United States may want to as

20    well.

21          For better or for worse, it seems like in the

22    four years I've been on the bench, every competency hearing

23    that we've had has been before me.  So I'm a little bit

24    familiar with this and haven't gone crazy myself yet.

25          So, Mr. Phillips, let me ask you this question first:

1    Are you able to communicate with Mr. Edwards?

2         **MR. PHILLIPS:**  In only the most limited fashion,

3    Your Honor.  My interactions with him have at times produced

4    monosyllabic responses or gestures to simple binary questions,

5    and I'm able to discern from that that he would prefer to not

6    be handcuffed, ankle and wrist, to the hospital bed that he's

7    been in since December.  That much, I'm certain of.

8         **THE COURT:**  Okay.

9         **MR. PHILLIPS:**  In terms of the merits of the charges

10   or the merits of the matter, I haven't been able to penetrate

11   his communication challenges, to be as generic as I can,

12   further than that.

13        **THE COURT:**  And that actually answered my next

14   question because my next question was going to be, if you're

15   not able to communicate with him, how do you know he wants to

16   have a detention hearing?  You've already answered that.

17        But this brings up another question.  And I'm going to

18   be very frank.  I don't know the answer to this, and I'm going

19   to put it back on both sides.  If you're unable to communicate

20   with your client other than on the most basic level,

21   monosyllabic answers, if that, how can we go forward with a

22   detention hearing because there's an issue of his competency?

23        And I know -- this much I do know:  I know preliminary

24   hearings, arraignments, changes of plea, initial appearances in

25   general are all considered critical proceedings in a criminal

1    case; and, therefore, if we have a competency question, we

2    don't go forward with them.

3         Detention hearings -- I'm not 100 percent familiar

4    with the law on that.  So if you can speak to that.  And if you

5    don't know the answer right now, I will give you time -- both

6    sides time to brief it because I'm not sure -- and it's kind of

7    a chicken and egg, is how can we have a detention hearing?  But

8    also understand, I don't want to violate Mr. Edwards' due

9    process rights and keep him chained to a hospital bed, not to

10   mention the resources that the marshals are expending on a

11   daily basis to have somebody there 24/7, if it's not necessary.

12        So with that speech, what do you say to that,

13   Mr. Phillips?

14        **MR. PHILLIPS:**  Your Honor, in anticipation of exactly

15   that question, our office has begun our research on it.  We

16   have not yet reached the answer yet.  I've also reached out to

17   the Office of the Federal Public Defender for any thoughts or

18   issues they may have.  Their initial feedback to me was "Huh.

19   Interesting first question."  So as I understand it, they may

20   be reaching out to the nationwide network to see if -- someone

21   has to have seen this before, but I don't know the answer off

22   the cuff.

23        And the other step that I have seen is that the

24   secondary question is even if the Court can fashion reasonable

25   conditions of release, how can the Court assure itself that he

1    understands them so that he can comply with them?  And both

2    sides of that coin are a challenge when competency is on the

3    bubble, as it were.

4         **THE COURT:**  And, once again, you took the words right

5    out of my mouth because that was going to be the next thing, is

6    that, you know, if there were conditions that could be set --

7    and I am aware of what the pretrial bail report had

8    recommended -- how can I get him to sign it?  How can I get him

9    to agree to it?  Again, it is an interesting conundrum because

10   I don't want to unnecessarily detain your client.

11        So let me -- I am absolutely going to give you time to

12   brief, and we'll talk about that in a minute.

13        Ms. Wick, what do you have to say about all that?  Do

14   you have any light you can shed?

15        **MS. WICK:**  Without the research to back what I'm about

16   to say, Your Honor, I would just note that it would obviously

17   be the United States' preference that he be evaluated for

18   competency first.  Like Mr. Phillips, I have not sufficiently

19   researched it yet.  I don't have an answer for you.  But that

20   has been a question that we've also contemplated.

21        I'd like to put -- I'd like to also add -- and please

22   stop me if you think I'm getting too much into the details or

23   the merits here, but from the United States' position, our

24   concern -- a big concern about release is some of the

25   information that was included in the medical -- I'm sorry -- in

1    the competency evaluation from Dr. Hall about his level of care

2    that would be provided at home and also his safety, quite

3    frankly.  So that is -- you know, that's a big concern and one

4    of the reasons why I don't believe that we could agree with

5    release to the extent that he would go back and live at his

6    residence.

7         THE COURT:  And, once again, everybody's pretty --

8    getting the words out of my mouth because I did notice -- and I

9    know exactly what you're talking about -- in the records about

10   some of the care.

11        But, actually, let me ask you this, because I just put

12   the cart before the horse:  Since we never got to any other

13   hearings, would the United States be making a motion to detain

14   Mr. Edwards?

15        MS. WICK:  Yes, Your Honor.  Yes.

16        THE COURT:  And would you mind just sharing what the

17   basis for that would be?  You're not making it now.  I'm just

18   making an inquiry, so I'm kind of getting --

19        MS. WICK:  Sure.

20        THE COURT:  -- some advice from both sides.

21        MS. WICK:  So it would be under 3142(f)(2)(A), serious

22   risk of flight.  And this is a difficult situation and set of

23   facts, but, you know, there is a history of flight, and the

24   family was involved in that, the same family that would be

25   caring for him.  So that would be the basis.

1        **THE COURT:**  And that's what I figured because I didn't

2   see anything in the pretrial bail report about dangerousness.

3   I assumed it was risk of flight.  So -- but, again, I know that

4   the United States has not officially made that motion yet

5   because we haven't gotten that far in the proceedings.

6        Mr. Phillips, go ahead.

7        **MR. PHILLIPS:**  Thank you, Your Honor.  One thing that

8   Ms. Wick was kind enough to note, a serious concern about the

9   care that he is receiving.  Suffice it to say, and without

10  revealing anything that's sealed or otherwise nonpublic, I can

11  address that issue with Ms. Wick once we're done with the

12  hearing, I believe, to her satisfaction.

13       **THE COURT:**  Okay.

14       **MR. PHILLIPS:**  The flight risk issue is a horse of a

15  very different color and will wait attention another day.

16       **THE COURT:**  Yes.  And I will just say, having some

17  familiarity with this case over the last two years -- I'll just

18  preview it for you, Mr. Phillips, if we get to a detention

19  hearing, that is a concern of mine as well on risk of flight.

20  I think -- and maybe I shouldn't be saying this -- if

21  Mr. Edwards was able to flee, there's not a doubt in my mind

22  that he would.  So -- based on what I have seen so far.

23       **MR. PHILLIPS:**  I am not unmindful of that information,

24  Your Honor, and what facts the Court bases that perception on.

25  I think, at the end of the day, we will be able to address that

1    to the Court's satisfaction at the bond hearing, but --

2         **THE COURT:**  Perfect.

3         **MR. PHILLIPS:**  -- that's, again, for another day.

4         **THE COURT:**  Exactly right.

5         So why don't we do this, then.  I think the best thing

6    to do is to give both sides some time to do some briefing so

7    that you can educate me, and, hopefully, we can come to a

8    resolution.

9         I am more than happy to have a detention hearing if

10   legally we can.  And it is -- I kind of feel like we're at a

11   crossroads.  We're either potentially violating Mr. Edwards'

12   rights by unnecessarily and unconstitutionally confining him.

13   On the other hand, we might be violating his due process rights

14   by going forward with a proceeding when we don't believe that

15   he's competent.  So where those two meet, the three of us will

16   figure it out together.

17        So let me ask you this, Mr. Phillips.  So since it's

18   going to be ultimately your burden at a detention hearing, I

19   want to give you however much time you need to do that

20   briefing.  How long would you like?

21        **MR. PHILLIPS:**  Your Honor, I don't think -- given the

22   status of our current research process, I think we could

23   probably knock this out no later than the end of the first or

24   beginning of the second week of February.  So 12 to 15,

25   16 days, something like that.

1      **THE COURT:**  Okay.  Would that be enough time,

2    Ms. Wick, for you as well?  Because I'd like to have the

3    briefing at the same time.

4      **MS. WICK:**  Yes, Your Honor.

5      **THE COURT:**  And what is -- Edward -- well, actually,

6    no.  I have my calendar up.  I can actually look.  For once I

7    have my computer up.

8      Would Friday, February 10th be enough time?  Or would

9    you like -- I'm happy to give you till the 17th if you would

10   like that instead.  What works for you better, Mr. Phillips?

11   The 10th is going to give you two weeks.  The 17th will

12   essentially give you three weeks.

13     **MR. PHILLIPS:**  Your Honor, given the import of the

14   issue and its fairly unique nature, I think the 17th is the

15   better choice.

16     **THE COURT:**  That's fine with me.  And I'm not putting

17   page limits.  And I'm also going to say this orally, and it'll

18   be in the minutes:  If there's anything you want to attach with

19   respect to Mr. Edwards' medical condition that you want to put

20   under seal, you have my permission to do that.  You don't have

21   to file a separate motion.  Just I want to try to streamline

22   it, and I will give this attention immediately.  And we'll

23   probably have to have a hearing, at which point, you know, we

24   may have to seal part of it, maybe not; do some of it

25   in camera, maybe not, just depending on what the issues are.

1        Given that, what do you say, Mr. Phillips, to trying

2   to resolve that issue first before we do the competency

3   hearing?  Or do you want to go ahead and get that ball rolling

4   as well?

5        **MR. PHILLIPS:**  Your Honor, I think we do that first

6   for the very simple reason that if there is -- I expect there

7   will be a competency hearing.  I have a call today, ironically,

8   at 5:00 with a potential expert, and I'll have to go through

9   the CJA 21 memo process to get that person retained and

10  informed and prepared.  And given how busy the mental health

11  professionals in Central Florida seem to be, I don't think

12  they'll be able to get it knocked out by the 17th.  So I think

13  we would do the detention hearing before we do the competency

14  matter.

15       **THE COURT:**  All right.  So then what I'm hearing is

16  we'll go ahead and get the briefing done on detention and try

17  to get something done -- you know, I'll get it as quickly as I

18  can given my schedule, and we will continue the joint request

19  for a competency hearing until we suss out what's going on with

20  the detention because I kind of think that might be the most

21  efficient way to do it, because if the briefing winds up saying

22  we can't have a detention hearing until we determine

23  competency, then I think the next thing to do would be we'd

24  have a status hearing and get the competency hearing

25  proceedings going.

1          And I will be very -- as generous as I can be with the

2    understanding we have various -- and that's the next question

3    I'm going to bring up is timing on allowing you to get experts

4    and if the United States wants to do anything in getting a

5    hearing set up.

6          That brings -- let me ask you this, then, Ms. Wick.

7    Let me stop myself.  Any concerns, then, with getting the

8    detention briefing out, resolving that issue before we set any

9    sort of a schedule or address a competency hearing?

10         **MS. WICK:**  No.  I think that's the appropriate way to

11   go, Your Honor.

12         **THE COURT:**  Okay.  Then this brings up another thing.

13   Do we have any speedy trial concerns?  Because if -- this is

14   another unique situation -- we haven't fully completed an IA or

15   an arraignment and I know he's not competent, do -- I know

16   under the speedy trial rule, competency issues stay the

17   deadlines automatically, and I think we're still within that.

18   But I'm -- you know, what do you say to that?  Do we need to

19   get anything on the record?  Because I don't want there to be

20   any speedy trial -- and this is just a weird situation we're

21   dealing with.

22         **MS. WICK:**  I also think because of the competency

23   issues, that we don't have any problems; however, Your Honor,

24   in an abundance of caution, I would ask for some time to just

25   look into that further, from the United States' perspective.

1    And if you would like me to file a status on that or something

2    for purposes of it being on the record, I'd be happy to do

3    that.

4              **THE COURT:**  All right.  What about you, Mr. Phillips?

5              **MR. PHILLIPS:**  Your Honor, I would share the

6    Government's request for a little bit of focus time.

7              I would note, Your Honor, that in either the last or

8    the one before the last status conference in front of

9    Judge Kidd, he, I believe, spoke to this issue and indicated

10   that because competence remains as yet undetermined, he did not

11   perceive there to be a speedy trial issue.  I don't know that

12   that record statement rises to the level of law of the case or

13   something to that nature, but that was what was shared with the

14   parties previously from the court.

15             **THE COURT:**  And I appreciate that.  And I think the

16   issue really is that it's Judge Berger's determination as to

17   speedy trial and not a magistrate judge's determination.

18             So why don't we do this:  When you file your briefing

19   on the 17th, in that briefing give me some information on

20   speedy trial.  If you come across that sooner, that's fine.

21   But it's -- I share Judge Kidd's belief, but my belief and I

22   think 59 cents will get you a stamp these days.  So I think it

23   would be better to go ahead and put it in the briefing, and

24   that way it will also notify Judge Berger.

25             But I agree.  Competency is still very much up in the

1    air.  We're still in the process.  So I think you'll be okay,

2    but let's go ahead and get something on the record by the 17th.

3         **MS. WICK:**  Yes, Your Honor.

4         **MR. PHILLIPS:**  Very well, Your Honor.  Thank you.

5         **THE COURT:**  With that, is there anything else that we

6    need to -- that answers all of my questions.  I think we've

7    kind of got a good game plan to kind of move this along.

8         Is there anything else, Ms. Wick, we need to take up

9    on behalf of the United States, then?

10        **MS. WICK:**  No, Your Honor.  Thank you.

11        **THE COURT:**  Thank you.

12        Mr. Phillips, anything on behalf of Mr. Edwards?

13        **MR. PHILLIPS:**  No, Your Honor.  Thank you.

14        **THE COURT:**  All right.  Thank you very much, then.  I

15   look forward to reading what you-all file on the 17th.  If

16   anything comes up in the meantime, if there's an issue, if

17   either one of you get notification that they're ready to

18   discharge Mr. Edwards, just file something with the Court, and

19   we'll take it up on an emergency basis and get it all sorted

20   out.

21        **MR. PHILLIPS:**  Your Honor, on that point, the medical

22   records we've received from ORMC --

23        **THE COURT:**  Uh-huh.

24        **MR. PHILLIPS:**  -- the second tranche -- and for

25   Ms. Wick's reference, it's at pages 17 and 22 thereof.  It's

1    redundant.  But he's been cleared for discharge on a medical

2    basis since 20 December.

3            **THE COURT:**  Okay.

4            **MR. PHILLIPS:**  In the interim, I, like Ms. Wick, have

5    communicated with the U.S. Marshals Service, and they have been

6    in the process of, but not successful, at finding a place that

7    can support him.  The Orange County jail has indicated it lacks

8    sufficient resources to do what is necessary, and my -- last I

9    was informed by Ms. Knox at the Marshals Service early last

10   week or late the week before, was that the Marshals Service was

11   casting about to find someplace; and, to my knowledge, they

12   have not yet found a place.  So he's medically cleared to go

13   but not correctionally cleared to go, I guess is the way to put

14   that.

15           **THE COURT:**  Ms. Wick, is that your understanding as

16   well?

17           **MS. WICK:**  That's also my understanding.

18           I would just note, from my review of the records,

19   which are voluminous, Your Honor -- and this is going off of

20   memory, but I believe what it notes now in the medical records

21   is that he is cleared medically but he is still there pending

22   competency.  So --

23           **THE COURT:**  Got you.

24           **MS. WICK:**  Yeah.

25           **THE COURT:**  Well, why don't we do this.  Can

1    you-all -- or can one or both -- actually, a joint notice would

2    be great, but if I can just get it from anybody.  Can you

3    please reach out to the marshals and ORMC and just give me a

4    joint status update by February 2nd, which is one week from

5    today?  Just let me know what's going on with that because if

6    they can find a place for him to go, that would be great.

7           And let me also put a finer point.  If you need me to

8    get involved, I will, but I would like to know why the Orange

9    County jail's refusing to take him.  They say they're not

10   capable of handling it.  I'd like to know specifically why.

11   And if you need an order from me on that, just let me know

12   because my concern, to be quite frank, is sometimes the Orange

13   County jail is not as forthcoming with information unless

14   sometimes a judge gets involved.  They can simply say they

15   don't want to deal with Mr. Edwards, but if he's been medically

16   cleared from the hospital, I'm not understanding why the Orange

17   County jail won't take him because we do competency evaluations

18   at Orange County jail and at Seminole County jail all the time.

19          **MS. WICK:**  If I could be heard on that, Your Honor?

20          **THE COURT:**  Sure.

21          **MS. WICK:**  My understanding is that Ms. Knox has been

22   in contact with the person in charge at the Orange County jail

23   on that issue and that they have provided some communications,

24   and I believe I was forwarded at least one of those e-mails.

25   But there are -- from my understanding and recollection, there

1   are care concerns regarding -- medical care concerns that they

2   have specified in an e-mail and that I can provide to the

3   Court.

4           **THE COURT:**  Okay.  And how long ago was that e-mail?

5   If you don't know, it's okay.  Was it in the last --

6           **MS. WICK:**  Two to three weeks, I would say.

7           **THE COURT:**  Okay.  Then we need to get an updated one

8   because that's the thing, is if now he's been cleared by the

9   hospital, that maybe changes things.  I can completely

10  understand up through, let's say, the end of December there may

11  have been an issue, but now it's January 26.  Let's get an

12  updated response from the jail as to why.  And I say this all

13  the time and my chambers will say here, I'm not concerned as to

14  what the answer is; I just want an answer.

15          **MS. WICK:**  Sure.

16          **MR. PHILLIPS:**  Your Honor, on that point, I'm not

17  privy to the e-mail of which Ms. Wick speaks, but I still speak

18  to the employees at the Orange County jail and have interfaced

19  with the Marshals Service, and the feel -- the reason I get --

20  pardon me -- is that it's not a medical question of the

21  administration of true health care but rather the physical

22  support he requires.  For example, I don't believe he can feed

23  himself, and I think it's that -- that gap between no need for

24  medical care or critical medical care in a hospital, that

25  interim area where he needs help with activities of daily

1    living.

2         THE COURT:  Okay.

3         MR. PHILLIPS:  Moving, eating, attending to his other

4    biological functions, and that sort of thing.

5         THE COURT:  Okay.

6         MR. PHILLIPS:  I think that is what's been explained

7    to me off the record and off the cuff as the glitch, but I too

8    would love to know what the answer is ultimately.

9         THE COURT:  Well, I'm hopeful -- and if I'm giving you

10   an impossible task, Ms. Wick, please just file a notice and

11   say, "Look.  I've tried.  I don't have the information," and

12   that's going to be fine.

13        But what I'm concerned about is -- and, again, I have

14   never gone to any sort of medical school, haven't even stayed

15   in a Holiday Inn Express lately, so I'm just talking off the

16   top of what I think is common sense, is if the hospital is

17   saying he's okay to go home -- I don't know what those release

18   papers say.  If they say he's okay to go home with extensive

19   care, then that's a different story.  Because when I hear

20   "released," I hear, "Get in a car and drive home."  If he's

21   being ordered released with extensive needs -- full-time,

22   24-hour care -- then that is -- I'm using a lot of sayings

23   today, but, you know, that's a horse of a different color, and

24   then I would understand why Orange County jail is not willing

25   to accept.

1          So if you can just verify that's what's going on and

2     file something by the 2nd, that will be helpful, and then I'll

3     just wait to see the rest of it by the 17th.

4          **MS. WICK:**  Yes, Your Honor.  And I will just note that

5     the care concerns, the daily living concerns that Mr. Phillips

6     expressed -- I believe that was the same type of things that I

7     had in that communication.  I'll put that in my status report.

8          And I will also note for the Court that I -- as

9     Mr. Phillips said, the marshals have been working on this for

10    some time, and the issue that I am understanding is that

11    because the defendant's medical issues are so complex, it is

12    not like we can point to one diagnosis and say, "This is the

13    problem."  And all of the facilities that they are -- that the

14    marshals are contacting and even BOP facilities require a very

15    succinct "Okay.  What is his medical diagnosis?  What kind of

16    care does that look like?"  And also, from my understanding,

17    you know, his -- his physical state can --

18         **THE COURT:**  It's in flux.

19         **MS. WICK:**  It is.  So that's the issue.

20         **THE COURT:**  That makes sense.

21         And let me also just say for the record, by no means

22    was I implying that the marshals were not doing everything they

23    can.  I know -- I'm very familiar with how hard they work on

24    these issues.  My concern is twofold: A, if we can get

25    Mr. Edwards out of the hospital and off of his wrist and ankle

1    restraints, if possible; and, B, I'm very well aware of how

2    short-staffed the marshals are, and to have people over there

3    24/7 is putting a real strain on them.

4         However, we're going to try to do it as rightly as we

5    can.  I know that's not a great word, but that's the word I'm

6    using.  And I appreciate both sides, all your information.

7    This has been very helpful, and I look forward to seeing what

8    you-all file on the 2nd and again on the 17th.

9         **MS. WICK:**  Thank you, Your Honor.

10        **THE COURT:**  So thank you-all very much.  Happy New

11   Year.

12        **MR. PHILLIPS:**  Thank you, Your Honor.

13     (Proceedings concluded at 2:33 P.M.)

14                    -     -     -

15                 **CERTIFICATE OF REPORTER**

16   I certify that the foregoing is a correct transcript of the
     record of proceedings in the above-titled matter.

17

18   _____          01/27/2023
     Heather Suarez, RPR, CRR, FCRR, FPR          Date

19   U.S. Official Court Reporter

20

21

22

23

24

25